IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| HANNAH CHRISTINE BANE, by and through her Guardian, DESIREE BANE, and her Conservator, DEIDRE TILLMAN, | : : : : : |
| Plaintiff, | : : |
| v. | : CASE NO.: 1:19-CV-179 (LAG) |
| SOUTHEAST CORRECTIONAL MEDICAL GROUP, INC., *et al.*, | : : : : |
| Defendants. | : : |

# ORDER[1]

Before the Court is Defendants Southeast Correctional Medical Group, LLC and C. Jackson, LPN's Motion to Exclude the Testimony and Affidavit of Nichelle Loud, to Disqualify Plaintiff's Attorneys, and for Attorneys' Fees and Litigation Expenses (Motion to Exclude and Disqualify).[2] (Doc. 27). For the reasons stated below, Defendants' Motion is **GRANTED in part**.

## FACTUAL BACKGROUND

This case arises from a medical incident and the resulting injuries Plaintiff Hannah Bane suffered in October 2017 while detained at the Lee County Jail.[3] (Doc. 1 ¶¶ 2, 9–11). On October 10, 2019, Plaintiff's mother, Desiree Bane, and sister, Diedre Tillman, filed this case on Plaintiff's behalf in their respective capacities as Plaintiff's Guardian and

---

[1] An earlier draft of this Order was docketed in error on March 31, 2020. This Order replaces that document and is the Order of this Court.
[2] Defendants Lee County and Reggie Rachals, in his capacity as a Lee County Sheriff's Officer, join this Motion. (Doc. 31).
[3] The Court derives the relevant facts from a comprehensive review of the Parties' briefs and supporting materials submitted in connection with Defendants' Motion and evidence presented at the hearing held on October 20, 2021. (*See* Docs. 27, 41, 43, 52, 61–66 and attachments thereto). The Court excludes facts that are legal conclusions, immaterial, or not supported by specific evidence in the record.

Conservator. (*Id.* ¶¶ 11, 16). Plaintiff brings this action against Defendants Southeast Correctional Medical Group, LLC (SECMG), Lee County, Lee County Sheriff Reggie Rachals, SECMG employee C. Jackson, LPN, and J. Does 1–10, unidentified employees or agents of Lee County or SECMG, raising claims under 42 U.S.C. § 1983 for violations of Plaintiff's Eighth and Fourteenth Amendment rights. (*Id.* ¶¶ 1, 19–23, 58–102).

Plaintiff is represented by Scott Robichaux and William Claiborne, attorneys from The Claiborne Firm, P.C. (Docs. 35, 36). Plaintiff is also represented by David Utter who initially entered his appearance as an attorney at the Claiborne Firm, but later filed an Entry of Appearance that represents that his representation is through the Fair Fight Initiative, Inc. (FFI). (Doc. 1 at 19; Doc. 49). FFI is a Georgia non-profit corporation founded in January 2018 by Utter, Claiborne, and several other individuals. (Doc. 41 at 2; Doc. 41-3 ¶ 9; Doc. 52-2 at 1). FFI's Articles of Incorporation state that the non-profit's purpose is "to promote, aid, encourage and foster legal assistance to persons arrested, detained, incarcerated, or otherwise involved in the criminal justice system who cannot afford a lawyer," and that FFI furthers this purpose by "represent[ing] individuals and groups who cannot afford a lawyer in their efforts to secure justice, reform the criminal justice system, and make the criminal justice system fairer and more humane." (Doc. 52-2 at 3). FFI uses funds raised "[t]hrough crowdfunding" to "support[] litigation and advocacy challenging mass incarceration and law enforcement violence, including in prisons and jails, in the Deep South." (Doc. 41 at 2 (citing Doc. 41-3 ¶ 9)). FFI is "a project of The Claiborne Firm, P.C.," and several of the firm's attorneys and employees have also served as directors, officers, or in other roles with FFI since its founding. (Doc. 52-1 at 1; Doc. 64 at 16:18–17:11, 19:7–14). Utter was the executive director of FFI until October 1, 2021. (Doc. 64 at 18:2–10).

At issue is the testimony and affidavit of Nichelle Loud, which Plaintiff seeks to offer in support of her case. Ms. Loud was incarcerated in the Lee County Jail in October 2017 and was housed in the same cell as Plaintiff at the time of the events giving rise to this action. (Doc. 27 at 3; Doc. 41 at 6). In December 2018, Ms. Loud reached out to Plaintiff's family to share what she witnessed while incarcerated with Plaintiff. (Doc. 41-2

at 2; Doc. 61-2 ¶ 2; Doc. 64 at 65:15–66:9, 67:7–10, 78:5–12; Doc. 65-4 at 45:18–47:9). During her deposition on September 28, 2020, Plaintiff's mother, Desiree Bane, was asked to tell Defense counsel "exactly what [her] conversation with [Loud] was." (Doc. 65-4 at 46:18–20). According to Bane, Loud told her that, on the day of her daughter's death, Hannah had been on the phone, "was crying and laid down on the bunk and put a blanket over head" for privacy. (*Id.* at 47:12–17, 50:16–24). At some point, "Hannah got stiff and kind of bucked up and then fell off of the bunk . . . ." (*Id.* at 47:19–20). Hannah "wasn't responsive, [and] she was turning blue." (*Id.* at 47:23–24). Loud "was trying to help Hannah breathe," and "[t]he girls were pushing the button and calling for officers to come . . . . [I]t seemed to take forever before officers responded." (*Id.* at 48:2–9). When the officers responded, all the inmates, including Loud, were locked in the cells while the officers remained in the common area with Hannah. (*Id.* at 48:10–15). Loud "described feeling helpless that she couldn't assist, even though [the officers] didn't seem to know what to do except to say that the EMS was on the way." (*Id.* at 48:23–49:1).

On December 31, 2018, Diedre Tillman emailed Mr. Claiborne and told him that Ms. Loud had contacted Plaintiff's mother earlier that day and was "very open to sharing her statement and speaking with you." (Doc. 41-2 at 2; Doc. 41-3 ¶ 5; Doc. 61-9 at 1, 5). Mr. Claiborne subsequently followed up with Ms. Loud and asked if she would provide a statement about what she witnessed at the jail in October 2017. Ms. Loud indicated that she was willing to do so. (Doc. 41-3 ¶ 5).

In February 2020, David Utter, Mr. Claiborne's partner at the Claiborne Firm, began communicating with Ms. Loud. (Doc. 41-3 ¶ 6; Doc. 64 at 20:12–14). During a phone call between Utter and Loud on February 8, 2020, Loud told Utter what happened to Plaintiff. (Doc. 41-3 ¶ 6; Doc. 64 at 42:8–11, 66:3–19). Utter told Loud that he "would like to secure a statement from her" about these events, and Loud again confirmed that she was willing to do so. (Doc. 41-3 ¶¶ 6, 12). Over the course of 2020, Utter and Loud spoke on the phone and via text numerous times. (Doc. 41-3 ¶ 7; Doc. 41-18 at 2–8). Through those conversations, Utter learned that unrelated criminal charges had been filed against Loud in the Superior Court of Lee County, Georgia. (Doc. 27-4 at 2–3). Loud told Utter about the

3

pending criminal case, and "ask[ed] Mr. Utter if he knew of a good attorney in the area in terms of representing [her] and one that [she] may be able to afford." (Doc. 64 at 64:19–21). Utter told Loud about FFI. (*Id.* at 68). On September 4, 2020, Utter identified a local criminal defense attorney, Eddy Meeks, to represent Loud in her pending criminal matter. (Doc. 61-17 at 1). Utter advised Loud that FFI would pay Meeks on her behalf and that she didn't need to worry about repaying the funds. (Doc. 27-3 at 5).

In July 2020, FFI decided to support the Bane family in the instant lawsuit by providing funds to the Claiborne Firm for litigation expenses incurred in the course of their representation of Plaintiff. On August 5, 2020, FFI transferred $30,000 to the Claiborne Firm as an advance for anticipated expenses. (Doc. 61-7 at 1). FFI and the Bane family executed a contract in September 2020, documenting FFI's role in this litigation. (Doc. 64 at 45:12–22). On September 11, 2020, a $5,000 check, drawn on the operating account of the Claiborne Firm, was used to pay Eddy Meek's retainer fee for his representation of Nichelle Loud. (Doc. 52-3). The memo line on the check reads: "Representation of Nichelle Miller[4] (Hannah Bane)." (*Id.*). Then, on November 8, 2020, Ms. Loud executed a sworn statement describing her recollection of the events of October 9 through 10, 2017, in the Lee County Jail. (Doc. 27-1 at 2; Doc. 61-2 at ¶ 3).

In the statement, Ms. Loud avers, in pertinent part:

> 2. On October 9–10, 2017, I was in the Lee County, GA jail. With me in the jail was Hannah Bane. I was in a bed next to her. Hannah told me she was withdrawing from heroin. Because I have a background in addiction counseling, I knew what Hannah should ask the jail's nurse for. Hannah requested medicine to help her with her withdrawals but was given Clonidine instead.
> 3. Jail personnel knew that Hannah was suffering from withdrawals. One guard even gave Hannah a "boat" to sleep in so she would not fall off her bed.
> 4. Hannah told nurse Jackson she was withdrawing. Jackson ignored Hannah for a day and a half. Jackson slammed the door in Hannah's face when Hannah begged for help, and when

---

[4] Nichelle Miller and Nichelle Loud are the same person. Ms. Loud's full name is "Nichelle Newanna Miller Loud." (Doc. 64 at 61:9–10).

4

> Jackson did give Hannah medication, it was the wrong kind. The Clonidine caused her blood pressure to get way too low, which caused a seizure.
> 5. Hannah Bane did not fall in the shower and did not fall off her bunk.
> 6. I was on the telephone when Hannah had the seizure that caused her to be taken from the jail by EMTs.
> 7. I immediately hung up and rushed over to help Hannah. When the guards appeared, they did not know how to respond appropriately. First, it was about 10 minutes from the start of Hannah's seizure until the guards started CPR. Then, they did CPR wrong. Second, they did not have a defibrillator available, and when the defibrillator arrived, they did not know how to use it.
> 8. After the incident, I told the guards everything I saw and what happened. What I told them was the truth. The security cameras should show me feeding Hannah, and bathing her, as well as mashing the call button for help and the nurse. The jail staff ignored Hannah's requests for treatment, and my requests for help for Hannah.

(Doc. 61-1 ¶¶ 2–8).

When Defendants became aware of the payment from the Claiborne Firm to Loud's attorney and noted that the payment referenced Hannah Bane, they filed the instant Motion seeking to exclude Loud's testimony and written statement, arguing that Plaintiff's counsel "indirectly compensate[ed] [Loud] in exchange for her testimony" in "violation of Rule 3.4 of the ABA Model Rules of Professional Conduct, ABA Formal Ethics Opinion 96-402, the Georgia Rules of Professional Conduct, and 18 U.S.C. § 201." (Doc. 27 at 1–2). Defendants also ask the Court to "disqualify [Plaintiff's attorneys] and [their] law firm as a result of their grossly unethical conduct" and to award Defendants "attorneys' fees and expenses incurred in relation to this motion." (*Id.* at 15, 18).

## PROCEDURAL BACKGROUND

Defendants filed the instant Motion to Disqualify and Exclude on January 26, 2021. (Doc. 27). The same day, Defendants also filed a Motion to Stay Discovery on January 26, 2021, requesting a stay of all discovery except for discovery related to the issues raised in Defendants' Motion. (Doc. 29). The Court granted the Motion to Stay Discovery on

January 29, 2021. (Doc. 34). On March 2, 2021, Plaintiff filed a Response to Defendants' Motion to Exclude and Disqualify. (Doc. 41). Defendants filed their Reply on March 30, 2021. (Doc. 52). After reviewing the Parties' submissions, the Court determined that additional evidence was needed to rule on Defendants' Motion and scheduled an evidentiary hearing for October 20, 2021. (*See* Doc. 57). In an Order entered on October 7, 2021, the Court instructed the Parties to be prepared to present evidence at the hearing on specific factual issues related to Defendants' Motion. (*Id.*).

At the October 20, 2021 evidentiary hearing, both Parties submitted multiple documents related to the evidentiary issues the Court identified in its October 7, 2021 Order. (*See* Docs. 61–62 and attachments thereto). Defendants also called Loud and Utter as witnesses and elicited testimony about their role in the conduct alleged in Defendants' Motion. (*See* Doc. 64 at 15:18–55:20, 61:11–79:25). After cross-examining Ms. Loud and Mr. Utter, Plaintiff agreed to present the testimony of Professor David Lefkowitz, who Plaintiff intended to call as an expert witness on legal ethics, through post-hearing briefing. (*Id.* at 81:4–23). Thus, the Court granted the Parties leave to depose Professor Lefkowitz and to file post-hearing briefs in support of their respective positions. (*Id.* at 82:6–16).

Plaintiff submitted a Post-Hearing Brief, the deposition testimony of Professor Lefkowitz, and other supporting materials on February 11, 2022. (Doc. 65; Doc. 65-3). On February 25, 2022, Defendants filed their Response to Plaintiff's Post-Hearing Brief. Accordingly, Defendants' Motion to Exclude and Disqualify is ripe for review. *See* M.D. Ga. L.R. 7.3.1(A).

## LEGAL STANDARD

Under Local Rule 83.2.1, all attorneys practicing before the United States District Court for the Middle District of Georgia are "governed by this Court's Local Rules, by the Rules of Professional Conduct adopted by the highest court of the state in which this Court sits, . . . and, to the extent not inconsistent with the preceding, the American Bar Association Model Rules of Professional Conduct." M.D. Ga. L.R. 83.2.1(A). Georgia Rule of Professional Conduct 3.4 provides that "[a] lawyer shall not . . . pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of

6

the testimony or the outcome of the case." Ga. R. Prof. Cond. 3.4(b)(3). ABA Model Rule 3.4 broadly prohibits attorneys from "offer[ing] an inducement to a witness," but does not include the requirement that the improper compensation be "contingent upon the content of the testimony or the outcome of the case." *See* Ga. R. Prof. Cond. 3.4(b)(3). The Court considers ABA Model Rule 3.4 and its attendant advisory opinions only to the extent they are consistent with Georgia Rule of Professional Conduct 3.4. *See* M.D. Ga. L.R. 83.2.1(A); *Adkins v. Hosp. Auth. of Hous. Cnty.*, No. 5:04-CV-80 (CAR), 2009 WL 3428788, at *7 (M.D. Ga. Oct. 20, 2009), *aff'd sub nom. McGriff v. Christie*, 477 F. App'x 673 (11th Cir. 2012) (per curiam).

18 U.S.C. § 201(b)(3) makes it a criminal offense for anyone to "directly or indirectly, corruptly give[], offer[], or promise[] anything of value to any person . . . with intent to influence the testimony under oath or affirmation of such first-mentioned person as a witness upon a trial, hearing, or other proceeding, before any court[.]" Proof of a "*quid pro quo*—a specific intent to give or receive something of value *in exchange* for" the testimony is required for conduct to violate this statute. *United States v. McNair*, 605 F.3d 1152, 1191 (11th Cir. 2010) (quoting *United States v. Sun-Diamond Growers of Cal.*, 526 U.S. 398, 404–05 (1999) (emphasis in original)).

If an attorney violates an applicable rule of professional conduct, the Court has broad discretion to impose discipline for the misconduct based on what the Court deems appropriate. M.D. Ga. L.R. 83.2.1(B). The Court's discretion, however, is restrained by several principles relevant here. First, the Eleventh Circuit has held that "a state rule of professional conduct cannot provide an adequate basis for a federal court to suppress evidence that is otherwise admissible." *United States v. Lowery*, 166 F.3d 1119, 1124 (11th Cir. 1999). In both criminal and civil cases, Federal Rule of Evidence 402 sets forth the "exclusive list of the sources of authority for exclusion of evidence in federal court." *Id.* at 1125 (citing Fed. R. Evid. 402). "State rules of professional conduct are not included in the list," and "those rules can have no role in determining whether evidence is admissible in federal court" proceedings. *Id.* at 1125 & n.3.

7

With respect to disqualification, the Eleventh Circuit has cautioned that disqualification "is a harsh sanction, often working substantial hardship on the client' and should therefore 'be resorted to sparingly.'" *Thornton v. Hosp. Mgmt. Assocs., Inc.*, 787 F. App'x 634, 637 (11th Cir. 2019) (per curiam) (quoting *Norton v. Tallahassee Mem'l Hosp.*, 689 F.2d 938, 941 n.4 (11th Cir. 1982)); *see also In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003). Because "accusations of unethical conduct are among the most serious of allegations that a court must consider" and "the brand of disqualification . . . could well hang over an attorney's name and career for years to come," motions to disqualify "should not be granted unless absolutely necessary." *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1562 (11th Cir. 1997) (citation omitted). Courts approach motions to disqualify opposing counsel with great caution because they "can be misused as a technique of harassment." *Herrmann v. GutterGuard, Inc.*, 199 F. App'x 745, 752 (11th Cir. 2006) (per curiam) (quoting Ga. R. Prof. Conduct 1.7, cmt. 15). Parties "often move for disqualification of opposing counsel for tactical reasons," and even when brought in good faith, "such motions inevitably cause delay." *Adkins*, 2009 WL 3428788, at *6; *Herrmann*, 199 F. App'x at 752.

An attorney's violation of an applicable rule of professional conduct may warrant disqualification. *See McGriff*, 477 F. App'x at 677–79; *Herrmann*, 199 F. App'x at 752. When assessing whether disqualification is appropriate based on a rule violation, the Court applies an "exacting" standard. *Thomas v. Tenneco Packaging Co.*, 293 F.3d 1306, 1322 n.24 (11th Cir. 2002). The party moving to disqualify opposing counsel "bears the burden of proving the grounds for disqualification." *Thornton*, 787 F. App'x at 637 (citing *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003)). To "base [a] disqualification order on an allegation of an ethical violation," the Court "must clearly identify a specific Rule of Professional Conduct which is applicable to the relevant jurisdiction and must conclude that the attorney violated that rule." *Herrmann*, 199 F. App'x at 752 (quoting *Schlumberger*, 113 F.3d at 1561). In Georgia, "it is always presumed that members of the State Bar have complied with the relevant ethical directory and disciplinary rules in the

8

absence of contrary evidence." *Adkins*, 2009 WL 3428788, at *6 (citing *Gene Thompson Lumber Co. v. Davis Parmer Lumber Co.*, 377 S.E.2d 15, 17 (Ga. Ct. App. 1988)).

## DISCUSSION

Defendants' Motion requires the Court to first determine whether Plaintiff's counsel violated Georgia Rule 3.4 or 18 U.S.C. § 201 when they paid a criminal attorney to represent Ms. Loud in her pending criminal case. *See Schlumberger*, 113 F.3d at 1561. If the Court concludes such a violation occurred, the Court must determine which, if any, of the sanctions Defendants have requested—exclusion, disqualification, and attorneys' fees—is appropriate. *See Lowery*, 166 F.3d at 1124–25.

The Parties do not dispute that Plaintiff's counsel paid criminal defense attorney Eddy Meeks $5,000 to represent Ms. Loud in her pending criminal case. (Doc. 27; Doc. 41). The central dispute here is whether those payments violated Georgia Rule of Professional Conduct 3.4 or 18 U.S.C. § 201. Both Rule 3.4 and 18 U.S.C. § 201 turn on whether the payment did or was intended to affect Loud's testimony in this case. Under Rule 3.4, the payment would be prohibited if it was "contingent upon the content of the testimony," *see* Ga. R. Prof. Conduct 3.4(b)(3); and, under 18 U.S.C. § 201(b)(3), the payment would constitute the criminal offense of bribery if it was given with "the intent to influence [Loud's] testimony," *see McNair*, 605 F.3d at 1190–91. Plaintiff argues that Loud's testimony has remained consistent from December 2018, when she first contacted Plaintiff's mother, to the time she gave her written statement in November 2020. (Doc. 41 at 2; Doc. 65 at 2 (citing Doc. 64 at 68:20–24)). As evidence of this, Plaintiff rely on Loud's March 3, 2021 affidavit in which she states, under penalty of perjury: "On November 8, 2020, I signed an affidavit. What I told Desiree Bane in December of 2018 was the same as what I put in the affidavit. My recollection and testimony about what happened to Hannah Bane has not changed." (Doc. 61-2 ¶ 3). Loud also testified to the same during the evidentiary hearing, stating that "everything that I've said has always remained the same" and that "[e]verything that I told [Plaintiff's] mom in the beginning is what I've said happened up until this point [and] that will never change." (Doc. 64 at 68:20–23, 79:22–24). Defendants argue that Loud's testimony changed drastically between 2018 and

9

2020. (Doc. 66 at 5–6). As there was no recording of the 2018 call between Loud and Plaintiff's mother, Desiree Bane, Defendants rely on Bane's recollection of her call with Loud during her deposition in September 2020. (*Id.* at 4–6).

There are stark differences between what Desiree Bane recalled in her deposition testimony and what Ms. Loud wrote in her November 2020 statement. Notably, Bane had no knowledge of Hannah telling Ms. Loud that she was in withdrawal. Nor did she mention the very significant event of Hannah begging Nurse Jackson for help only to have the door slammed in her face. Furthermore, Bane recalled Ms. Loud telling her that Hannah laid down on the bunk, pulled a blanket over herself, and subsequently "got stiff and kind of bucked up and then *fell off of the bunk*[.]" (Doc. 65-4 at 47:12–20). Ms. Loud, however, avers that Hannah "did not fall off her bunk." (Doc. 27-1 ¶ 5). There are other discrepancies, but these are extremely telling as they are not small details but important facts that support necessary elements of Plaintiff's case. Moreover, while the Court credits that a grieving mother cannot be asked to remember all of the details of a conversation that occurred two years earlier, the significance of the information leads the Court to believe that this is not merely a matter of forgotten or misremembered facts. In light of Desiree Bane's testimony about what Ms. Loud told her and the very significant omissions, Ms. Loud's testimony that her statement has not changed is not credible. Based on the evidence before the Court, the Court finds that Loud's affidavit is materially different from the statement she gave to Desiree Bane in December 2018.

As noted above, Rule 3.4 requires that the payment be contingent on the content of the testimony. Ga. R. Prof. Conduct 3.4(b)(3). Furthermore, an element of the criminal offense of bribery under 18 U.S.C. § 201(b) is the existence of a *quid pro quo*. *See United States v. Whitman*, 887 F.3d 1240, 1247 (11th Cir. 2018) ("Official-act bribery requires the "intent 'to influence' an official act," which means that there must be a "*quid pro quo*," or "a specific intent to give or receive something of value *in exchange* for an official act."). Unlike the cases cited by Defendants, here, there is no direct evidence that the payment to Mr. Meeks was contingent on the content of Ms. Loud's testimony or that said retention and payment was a *quid pro quo* for providing the expanded affidavit Ms. Loud ultimately

10

signed. (*See* Doc. 27 at 11–12). In *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1524–25 (S.D. Fla. 1994), *aff'd in part*, 117 F.3d 1328 (11th Cir. 1997), the witnesses were paid for testimony contingent upon clear written conditions; and, in *Keyfer & Associates, Inc. v. Brock*, No. 1:07-CV-2297-CC, 2009 WL 10672772, at *3–4 (N.D. Ga. Mar. 31, 2009), the fact witness entered into a contingency agreement with the plaintiff, which specifically outlined that the witness and plaintiff would share any proceeds in return for his testimony.

There is, however, sufficient circumstantial evidence to show that the payment was contingent on providing the additional information that appears in Ms. Loud's affidavit in violation of Georgia Rule 3.4. The timing and circumstances of the payment to Mr. Meeks and the subsequent addition of information to Ms. Loud's statement support a finding that the retention of Mr. Meeks was contingent upon Ms. Loud providing the altered statement. The timeline shows that FFI and Bane's representatives entered a contract in September 2020. On September 11, 2020, the Claiborne Firm issued a check to Mr. Meeks with the memo line "Representation of Nichelle Miller (Hannah Bane)," and on November 8, 2020, Ms. Loud signed the affidavit containing the additional information. The memo line on the check directly connects the payment of Mr. Meeks, who has no apparent relationship to the instant litigation, to the Hannah Bane representation. Accordingly, the Court finds that the Claiborne Firm and FFI retained and paid Mr. Meeks to represent Ms. Loud contingent upon her execution of the subject affidavit. Thus, the affidavit was obtained in violation of Georgia Rule 3.4.

While the Court is suspect of the timing and the circumstances of the retention of Mr. Meeks and Ms. Loud's change in testimony, there is not sufficient evidence in the record to support a finding that Plaintiff's counsel violated 18 U.S.C. § 201. The Court, therefore, declines to disqualify counsel. Sanctions for the violation of Georgia Rule 3.4, however, are appropriate. As Ms. Loud is the only witness to the events surrounding Hannah Bane's injury and as the majority of Ms. Loud's testimony has remained consistent from her first call to Hannah Bane's mother to the signing of the affidavit, exclusion is an extreme and unwarranted remedy. An appropriate sanction is to exclude those statements

which the Court has determined are inconsistent. Accordingly, numbered paragraphs 4 and 5 of Ms. Loud's affidavit, (Doc. 61), shall be struck, and Ms. Loud may not offer such testimony in any hearing or trial of this matter. Furthermore, Plaintiff's counsel shall pay reasonable attorneys' fees related to the prosecution of this motion.

## CONCLUSION

Accordingly, Defendants SECMG and Jackson's Motion to Exclude the Testimony and Affidavit of Nichelle Loud, to Disqualify Plaintiff's Attorneys, and for Attorneys' Fees and Litigation Expenses, joined by Defendants Lee County and Rachels (Docs. 27, 31) are **GRANTED in part**. Further, Defendants are ordered to submit their reasonable costs and fees associated with the filing of this Motion within **twenty-one (21) days** of the entry of this Order. Plaintiff may file a response in objection to the amount of fees and costs sought within **twenty-one (21) days** of Defendants' filing.

**SO ORDERED**, this 31st day of March, 2022.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**